AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED

*July 26, 2023*

Nathan Ochsner, Clerk of Court

|  |  |
|---|---|
| United States of America<br>v.<br>Luis Miguel Dominguez Mejia<br>Isabel Bolanos Campos<br>Andrea Gonzalez Bautista<br>Gabriel Dominguez Gonzalez<br><br>*Defendant(s)* | Case No.  4:23-mj-1510 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  July 19, 2023 through July 24, 2023  in the county of  Harris  in the
Southern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1203(a) and 2 | Aiding and Abetting Hostage Taking |

This criminal complaint is based on these facts:
See attached Affidavit of probable cause

☑ Continued on the attached sheet.

*Complainant's signature*

FBI Special Agent Marquis Nelson
*Printed name and title*

Sworn to before me telephonically.

Date:  July 26, 2023

*Judge's signature*

City and state:  Bend, OR

United States Magistrate Judge Andrew Edison
*Printed name and title*

4:23-mj-1510

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Marquis Nelson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since October of 2022. Since becoming an agent, I have worked and assisted on different violent crime investigations. I am currently assigned to the FBI Houston Field Office Violent Crimes Task Force which investigates violent incidents, violent individuals, and gangs. I have received training in general law enforcement and federal investigations. I have gained knowledge in the use of various investigative techniques and participated in numerous aspects of criminal investigations, including physical and electronic surveillance, utilization of confidential human sources, consensually monitored telephone conversations, the execution of search warrants, and the arrest of violent criminals. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1203 (Hostage Taking), and Title 18 United States Code 1324 (Transporting Aliens within the United State) have been committed.

## STATUTORY AUTHORITY

4. This investigation concerns violations of Title 18, United States Code, Section 1203 (Hostage Taking).

## PROBABLE CAUSE

5. Jorge Tigre, a credible and reliable person, reported that on or about May 20, 2023, he paid $9,000 to have his girlfriend, Blanca Fajardo smuggled from Ecuador to the vicinity of Newark, NJ. Tigre stated that while Fajardo was in transit to the United States, smugglers contacted Tigre and demanded an additional $15,000 to smuggle Fajardo, which he paid on or about June 25, 2023.

6. Tigre stated that on or about July 19, 2023, Tigre received a call from Fajardo via WhatsApp phone number +1-267-748-7454 (Target Mobile Phone), during which Fajardo told Tigre she was in Houston but was being held hostage until he paid the smugglers an additional $10,200 to transport Fajardo from Houston, TX to Newark, NJ. Tigre stated that on July 21, 2023, the hostage takers called Tigre again using the Target Mobile Phone to let him know it would cost an additional $1,000 for every day that went by without Tigre paying the additional ransom.

7. At approximately 11:44 pm on July 21, 2023, Tigre obtained proof of life via a video recording of Fajardo which was sent to him via the Target Mobile Phone and Tigre provided the video to me.

8. On July 24, 2023, FBI Special Agents utilized electronic surveillance techniques authorized in a previous warrant to narrow the location of the target cellular device to two apartments located at 7313 Northline Drive, Houston, Southern District of Texas. The two

apartments identified are apartments 310 and 311. Apartment 310 is on the first floor and apartment 311 is on the second floor.

9. On July 24, 2023, I, along with the assistance of local law enforcement, successfully arranged the exchange of Fajardo from the hostage takers. The plan involved Jorge Tigre's brother, Jaime Tigre, exchanging $8,000 for the safe return of Fajardo. The transaction was conducted under FBI and local law enforcement surveillance. During the exchange, an FBI surveillance team observed a vehicle leaving 7313 Northline Drive, Houston, Southern District of Texas to the prearranged meet location at Fiesta Mart located at 4711 Airline Drive, Houston, Texas 77022. FBI Task Force Officer Ryan Hilz observed the exchange. After Fajardo was safely received, law enforcement secured the defendant's vehicle and took the occupants into custody. The occupants were identified by Harris County Sheriff's deputies as Luis Miguel Dominguez Mejia, Isabel Bolanos Campos, and Andrea Gonzalez Bautista. FBI Special Agent David Sobeck recovered the $8,000 from Isabel Bolanos-Campos's purse along with the Target Mobile Phone.

10. Fajardo, a person whom I find credible and reliable, was interviewed and stated that she was being held in an upstairs apartment and that there was another female hostage also being held in the same apartment with her. Fajardo stated that when she was taken to the meet location, one other female was still in the apartment being guarded by a male.

11. The driver of the hostage vehicle was Dominguez-Mejia. I recognize Dominguez-Mejia's voice as that of the hostage taker on the recorded phone calls demanding the money. Dominguez-Mejia told the arresting officer with Harris County Sherriff's Office that he had just come from Apartment 311.

12. Based on the above information, the FBI Special Agent David Sobeck conducted a knock and talk at 7313 Northline Drive, Apartment 311, Houston, Southern District of Texas ("Target Location"). The Target Location was occupied by a male and a female. A picture of the male and female were shown to Fajardo, who confirmed the male was one of the hostage takers and the female was another victim who had crossed the border with Fajardo. SA David Sobeck identified the male as Gabriel Dominguez-Gonzalez and the female as Rafaela Beatriz Bravo Lopez. SA Nicole Quesenberry spoke to the female, Lopez, a person whom she finds credible and reliable, who stated that she was also being held for ransom in the apartment. Dominguez-Gonzalez was taken into custody.

13. Fajardo and Lopez both stated that they were being held at the Target Location until their families paid an $8,000 ransom. Lopez stated that her family was arranging to pay the $8,000 ransom when she was found by law enforcement in the Target Location. Lopez advised there were initially two other female hostages being held with Lopez and Fajardo at the Target Location, but the other two were released after paying the $8,000 ransom. Fajardo and Lopez both stated that they were kidnapped along with two other females in Juarez, Mexico and forced to pay $15,000 ransom before they were allowed to be smuggled into the United States. Fajardo and Lopez were both shown photographs of all four defendants and Fajardo and Lopez both identified Dominguez-Mejia, Bolanos-Campos, Gonzalez-Bautista, and Dominguez-Gonzalez as their captors. Fajardo and Lopez both stated that Dominguez-Mejia, Bolanos-Campos, Gonzalez-Bautista, and Dominguez-Gonzalez all had knowledge of them being held for ransom and that they were not free to leave. Fajardo and Lopez both stated that throughout their captivity, all four defendants took turns watching the hostages to ensure they didn't leave the apartment. Fajardo and Lopez both stated that if Dominguez-Mejia, Bolanos-Campos, and Gonzalez-Bautista were

all not at the house, Dominguez-Gonzales would stand and sleep by the door to make sure they didn't leave.

14. Dominguez-Mejia, Bolanos-Campos, Gonzalez-Bautista, and Dominguez-Gonzalez were all transported by Harris County deputies and FBI agents to FBI Houston to be processed and interviewed. All four individuals were taken into custody and were read their Miranda warnings prior to being questioned. During the interviews the following information was provided:

15. Dominguez-Meji stated that Farjardo and Lopez were not free to leave while they were in his possession and that they had to pay $8,000 to be released to their families. Dominguez-Meji stated that he did not own Fajardo or Lopez as he just provided shelter for them and handled the negotiations between the families but did not come up with the overall price. Dominguez-Meji was going to be compensated by his boss for picking up the hostages after they arrived from Mexico and keeping them at his house.

16. Bolanos-Campos stated that Dominguez-Meji has done these Hostage exchanges on multiple occasions. Dominguez-Meji would leave the house for a couple days at a time and return with multiple people, male and female. Sometimes it would only be one person but the most Bolanos-Campos has seen come at one time was four people. Dominguez-Meji would then conduct negations over the phone with the family members of the people he was holding to talk about what they had to pay for their release. Bolanos-Campos was directed by Dominguez-Meji to cook and clothe the people that Dominguez-Meji would bring to their home. While cooking, occasionally Gonzalez-Bautista would help Bolanos-Campos cook the food that would be provided to the people that Dominguez-Meji would bring.

17. Gonzalez-Bautista advised that she was paying rent to stay at the apartment along with Dominguez-Meji, Bolanos-Campos, and Dominguez-Gonzalez. Gonzalez-Bautista denied knowledge of people being held at the apartment for ransom as she works a lot and stays out of Dominguez-Meji and Bolanos-Campos's business. Gonzalez-Bautista knows Dominguez-Meji and Bolanos-Campos because they grew up in the same place in Mexico and Gonzalez-Bautista is the god mother of Dominguez-Meji and Bolanos-Campos's child. Both Fajardo and Lopez stated Gonzalez-Bautista knew they were being held hostage and took turns watching them to ensure they didn't leave the apartment.

18. Dominguez-Gonzalez advised that he resides at the apartment and stays on the couch in the front room because he doesn't have a room of his own.

19. Both victims, Fajardo and Lopez, stated that they are not United States Citizens. All four defendants, Dominguez-Meji, Bolanos-Campos, Gonzalez-Bautista and Dominguez-Gonzalez stated that they are not United States Citizens.

20. Based on the foregoing your Affiant believes there is probable cause to believe that on or about July 24, 2023, Dominguez-Mejia, Bolanos-Campos, Gonzalez-Bautista, and Dominguez-Gonzalez committed Aiding and Abetting Hostage Taking; 18 U.S.C 1203(a).

I swear under penalty of perjury that the foregoing is true and correct,

Marquis Nelson
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me by telephone on this the 26th day of July, 2023 and I find probable cause.

ANDREW EDISON
UNITED STATES MAGISTRATE JUDGE